## Case No. 5,577.

GOODYEAR et al. v. MULLEE et al.

[5 Blatchf. 429; 3 Fish. Pat. Cas. 209.][1]

Circuit Court, S. D. New York. July 31, 1867.

PATENTS—VIOLATION OF INJUNCTION — INFRINGEMENT—IMPROVEMENT IN MANUFACTURE OF INDIA RUBBER.

1. Circumstances stated, under which defendants charged with violating an injunction issued to restrain the infringement of letters patent, are entitled to little favor or consideration.

2. The extent of the claims of the two letters patent Nos. 556 and 557, reissued to Henry B. Goodyear, as administrator, &c., of Nelson Goodyear, deceased, May 18, 1858, for an "improvement in the manufacture of India rubber," defined.

3. The patentee is not limited, by those patents, to a quantity of sulphur not exceeding one pound to a pound of gum, provided the substance produced has the qualities of the substance referred to in his patents.

4. It is an infringement of those patents, to make a substance having the properties of the substance referred to in those patents, by compounding as much as twenty-two ounces of sulphur with a pound of gum and subjecting the mixture to the heating process described in those patents.

5. It is a violation of an injunction against the infringement of those patents, for a defendant to fit up machinery and keep it in running order, in a factory which he knows is making hard India rubber in violation of those patents.

In equity. These were separate motions for attachments against the two defendants [William Mullee and John Miller] for alleged violations of an injunction. The injunction was a perpetual injunction, issued on the 18th of October, 1866, in pursuance of a decree made on a final hearing in this cause. The injunction restrained the defendants from "making, manufacturing and selling, in violation of" letters patent of the United States, reissued on the 18th of May, 1858, to Henry B. Goodyear, as administrator of the estate of Nelson Goodyear, deceased, for "a new and useful improvement in the manufacture of India rubber," and known and distinguished as reissues Nos. 556 and 557, and extended for seven years from May 6, 1865, "any combs or other articles which are made and manufactured of India rubber, or other vulcanizable gum, mixed with sulphur, or any equivalent therefor, either with or without auxiliary ingredients, in the proportion of one pound of India rubber, or other vulcanizable gum, to about from four ounces to a pound of sulphur, and then subjecting such mixture of India rubber, or other vulcanizable gum, and sulphur, or any equivalent therefor, to a high degree of artificial heat, substantially as described and claimed in the said two reissued letters patent." [The original patent, No. 8,075, was granted to N. Goodyear, May 6, 1851.] This injunction was served on the defendant Mullee on the 6th of November, 1866,

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission.]

and on the defendant Miller on the 20th of December 1866.

Abbett & Charles M. Keller and William J. A. Fuller, for plaintiffs.

Edmund Wetmore, Thomas Darlington, and Gardner Spring, for defendants.

BLATCHFORD, District Judge. Both of the defendants have been infringing these patents for several years, at three places in Pennsylvania, and at New York City, and the various establishments in which they have been working have been broken up by the process of the courts. All the establishments in which Miller has worked since 1862 have been factories engaged in infringing these patents. They are skilful workmen, fully acquainted with the process and the article described in the Goodyear patents. Mullee learned the business of making combs in the factory of the plaintiff [Conrad] Poppenhusen. On the 22d of December, 1862, the defendants, having been engaged in infringing these patents, and having thus rendered themselves liable to suit therefor, entered into a written agreement with the plaintiff Poppenhusen, who is the sole licensee, under the patents, for the manufacture and sale of combs and other articles, which agreement, after reciting that Mullee and Miller had rendered themselves liable to a suit for their infringement of the patents, and that it was deemed expedient by the parties that a settlement should be made to prevent all future legal proceedings, contained the following provisions: (1) Mullee and Miller admitted the validity of the patents, and agreed that they would never, during the existence of the patents, or of any extension of them, "engage, either directly or indirectly, or in any way, shape or manner, in the manufacture of any article, of any kind, made of what is known as vulcanite, or the hard compound of India rubber or other vulcanizable gums, or in the sale of the same, and will not aid, assist or abet any one who is engaged, or may hereafter engage, in the manufacture or sale of such articles;" (2) Poppenhusen released Mullee and Miller from all damages which he had sustained by reason of their infringements of the patents, and agreed that he would never at any time collect such damages from them. Notwithstanding this agreement, the defendants went on persistently infringing the patents, by making India rubber combs in violation of them. For such an infringement by them this suit was brought, which resulted in the injunction, the alleged violation of which is complained of. These facts are referred to, for the purpose of showing how little favor or consideration the defendants are entitled to, and how improbable it is, that, if they have in fact violated the injunction, they have done so innocently and unwittingly.

In regard to Mullee, it appears, that since the injunction was served upon him, he has made and sold combs composed of India rubber and sulphur vulcanized by a high degree of artificial heat, and having the properties possessed by the article described in the Goodyear patents. These combs he made at Chesterville in Pennsylvania, and brought to New York as samples to obtain orders, where some of them were sold by his agent, from whom he received the pay therefor. The only defence set up by Mullee, in excuse for this act, is, that, in the combs in question, the India rubber and sulphur are combined in the proportion of eighteen ounces of sulphur to sixteen ounces of India rubber, and that the combs are made by a process used for combining the India rubber with the sulphur, whereby it is possible to combine as much as twenty-two ounces of sulphur with sixteen ounces of India rubber, and then vulcanize the compound by a high degree of artificial heat, so as to produce a useful article of hard India rubber. It is alleged that this process and the article resulting are not covered by the Goodyear patents, and that, therefore, Mullee, in making the combs in question, has not been guilty either of violating the injunction or of infringing the patents. It is important, therefore, to inquire as to what is covered by these patents.

Nelson Goodyear, in December, 1849, filed in the patent office a caveat, containing a description of the invention for which he applied for a patent in December, 1850, and for which he obtained the patent on the 6th of May, 1851. It was reissued in two parts on the 18th of May, 1858. In the caveat he states, that his "invention or discovery consists in the production, by means of a composition of India rubber and sulphur subjected to intense heat, of a new and useful substance, hitherto unknown, resembling, in hardness, bone or horn, but more extensively applicable, and less costly in use, than either of those substances;" that "the main and indispensable ingredients of the composition are India rubber, or caoutchouc, and sulphur;" that of these he takes "certain proportions, say equal parts by weight of each," and mixes them "thoroughly in any convenient manner;" that "these proportions may, however, be considerably varied, without changing materially the product;" that "no precise rule of proportions can be given, or definite limits assigned, when sulphur alone is combined with rubber;" and that "a much less quantity of sulphur than four onces to a pound of rubber would be insufficient in any case." In the patent of May, 1851, after describing the process of compounding the India rubber and sulphur and combining with them other ingredients, he states as follows: "The proportions specified of both these compounds may be considerably varied, without materially changing the result, but in no case will a much less quantity of sulphur than four ounces to every pound of caoutchouc be sufficient, in which respect, particularly, my compounds differ very essentially from every other composi-

tion of India rubber in use, as, in all other rubber compositions, the least quantity of sulphur that will suffice to cure the article, is aimed at."

The patents of May, 1858, are a division into two reissues, one, No. 556, for the process, and the other, No. 557, for the product. No. 556 states, that the improvement covered by that patent "consists in thoroughly mixing India rubber, or other vulcanizable gum, with sulphur, whether with or without auxiliary ingredients, in the proportion of about four ounces to a pound of sulphur to a pound of the gum, and then subjecting the same to a high degree of artificial heat, as in the said vulcanizing process of Charles Goodyear, until the compound shall have acquired the required hard and tough property found, in various degrees, in ivory, bone, tortoise shell and horn, and the spring-like property, under flexure, found in whalebone." No. 557 states, that the invention covered by that patent "consists in the production of a new manufacture or artificial substance having the hard and tough properties found, in various degrees, in ivory, bone, tortoise shell and horn, and the spring-like property, under flexure, of whalebone, and which, in the process of manufacture, is plastic, so that it can be moulded or modelled with facility into any desired shape, and which, when completed, may be wrought and polished to as high a degree as any of the native substances for which it is a substitute, which said manufacture or artificial substance is produced by the admixture of Indian rubber, or other vulcanizable gums, and sulphur, in the proportions of one pound of the gum to about from four ounces to a pound of sulphur, whether alone or with other substances, and then subjected to a high degree of heat, which should not be less than from 260° to 275° Fahrenheit's scale, during a period of six or more hours, or until the required degree of hardness has been obtained." No. 556 and No. 557 then both of them go on to describe the mode of procedure in working the invention, and they both use this language: "The India rubber, or any of the allied gums which are known to be vulcanizable by the before named process of Charles Goodyear, is thoroughly mixed with sulphur, as for the well known vulcanizing process, but in different proportions, as, in the working of the said vulcanizing process of the said Charles Goodyear, the best results are obtained by the use of the smallest proportional quantity of sulphur which will suffice to produce the change termed vulcanization, and which is usually not over one ounce of sulphur to a pound of gum, while so small a proportional quantity of sulphur would entirely fail of producing the result obtained by the improved process of the said Nelson Goodyear. After the gum and sulphur have been thoroughly incorporated, and while the compound is in a plastic state, it may be rolled into sheets, or put into any form desired, by moulding or otherwise, and then, whether in moulds or otherwise, subjected to a high degree of heat, which should not be less than from 260° to 275° of Fahrenheit's scale, in a steam or other heater, and kept there about six hours or more, that is, until the compound substance has attained the required degree of hardness." The patents then go on to speak of the substitution, for purposes of economy and other objects, of other substances, for a portion of the sulphur, in the compound, and afterwards state: "The various additional or auxiliary ingredients only affect the product in degree, as the character of the new manufacture or substance is dependent upon the use of caoutchouc, and a sufficient proportional quantity of sulphur, and a sufficiently high degree of heat, continued long enough, to induce the change indicated. And, although much latitude may be taken in the proportional quantity of sulphur, a proportion much less than four ounces to a pound of caoutchouc will utterly fail to produce the new substance or manufacture hereinabove described."

These patents have heretofore been before this court. In the case of Goodyear v. New York Gutta Percha Co. [Case No. 5,580], decided on final hearing, before Mr. Justice Nelson and Judge Smalley, in October, 1862, it was set up, as a defence to a bill in equity filed for the infringement of the patents, that the defendants were manufacturing hard India rubber under a patent granted to Austin G. Day, November 9, 1858, and by a process different from that described in the Goodyear patents. The court, Mr. Justice Nelson delivering its opinion, upheld the validity of the patents and the novelty of the inventions covered by them, after a full investigation. It was claimed, in that suit, by the defence, that the hard compound made under the Day patent was made by a process differing, in length of time, in the degree of heat, in the proportion of the ingredients, and in the mode of equalizing the temperature, from that described by Nelson Goodyear. Day claimed in his patent three things: (1) Running the heat, for vulcanizing the hard compound, through the high range of temperature, and the comparatively great length of time, set forth in his patent, that is, commencing the heat at about 275° and carrying the same to 300° and upwards; (2) making the compound of two parts by weight of rubber, or other vulcanizable gum, and one part of sulphur, when such composition is preparatory to such running of the heat; (3) equalizing the temperature, in the heating apparatus, by mechanical means, as set forth. This court decided, in the case referred to, that there was nothing on the subject of the degree of heat in making the hard compound, described in the Day patent, that was not found in the Nelson Goodyear patents; and that, in view of what was stated by Nelson Goodyear, in his caveat and patents, in regard to the proportional quantities

of India rubber and sulphur to be used in making the compound, there was no ground for Day's claim to an improvement in that respect.

Now, in view of the language contained in the caveat and patents of Nelson Goodyear, and of the construction thus put by this court upon the patents, it is manifest that the invention of Nelson Goodyear consists in producing a substance having the qualities named by him, and produced by mixing sulphur with a vulcanizable gum, in the proportions of one pound of gum to a quantity of sulphur sufficient to produce such substance, and then subjecting the compound to a degree of artificial heat sufficiently high to produce such substance, for a length of time sufficient to produce it. As to the quantity of sulphur, the patentee says, in effect, that you will not obtain the desired result if you use materially less than four ounces of sulphur to a pound of gum, but that, beyond that quantity, any quantity that will induce the change indicated, is within the scope of his invention and claim. So, in regard to the degree of heat, he says, in effect, that you will not obtain the desired result if you use a less degree of heat than one from 260° to 275° of Fahrenheit, continued six hours or more, but that you will still be within the range of his invention, if you apply to such compound a sufficiently high degree of heat, continued long enough, to induce the change indicated. There is no foundation for the suggestion, that the patentee is limited to a quantity of sulphur not exceeding one pound to a pound of gum, or that a quantity of sulphur as great as twenty-two ounces to a pound of gum is not within the claims of his patents, provided the substance produced has the qualities of the substance referred to in his patents.

The combs made and sold by Mullee are made of a substance which has the properties of the substance referred to in the patents, and is compounded of the ingredients named in the patents, mixed in proportions within the range covered by the patents, and subjected to the heating process described in the patents. Mullee does not claim that his combs were made under any patent, but he refers to an application for a patent made May 14, 1867, by one Stanton Mullee, and to a caveat filed July 5, 1867, by the defendant Mullee himself, as describing the particular process by which the combs were made. The caveat is not produced, although the affidavit of the defendant Mullee states, that the combs were made particularly under the invention set forth in the caveat. It is alleged, however, that the combs were made according to the process described in the application referred to, which is put in evidence. The specification, forming part of that application, states, that the invention has for its object the production of a hard rubber compound, which

shall contain a much larger proportion of sulphur, and which can be made much cheaper than by any previously known process. It then describes the process, which consists in grinding the sulphur, and then passing it successively through three sieves, each finer than the preceding one, and then drying it, and then grinding the rubber and placing it in a mixing mill, containing two rolls, one of them heated, to which the rubber adheres, when the dry sulphur is applied to it in small quantities at a time, until the proper quantity is taken up. The specification then says, that the quantity of sulphur "should never be less than a pound of sulphur to one pound of rubber," and may be "increased to twenty-two ounces to a pound of rubber, when a still cheaper article is desired." It then describes the apparatus for heating, and states the degrees of heat used, which are within the range covered by the Goodyear patents. There is nothing in all this which takes the process or the product out of the scope of the Nelson Goodyear patents, or enables the process to be used for making the product, or the product to be made by the process, without liability for thereby infringing the Goodyear patents.

The defendant Mullee has, therefore, infringed the patents and violated the injunction, and an attachment must issue against him. He has made and sold, in violation of the patents, combs made of India rubber mixed with sulphur, in the proportion of one pound of India rubber to about from four ounces to a pound of sulphur, the mixture being subjected to a high degree of artificial heat, substantially as described and claimed in the patents. It is true, that he disclaims all intention of disregarding or contemning the process of this court, and, in view of the peculiar language of the injunction, it is possible he may have honestly supposed that, if he used more than a pound of sulphur to a pound of gum, he was not infringing the patents. There are many circumstances, however, in the case, which militate against this view, and, in the proceedings on the attachment, an opportunity will be offered to both parties to produce further testimony on this point, with a view to determining as to what punishment shall be awarded for the contempt.

In regard to the defendant Miller, he has, since the service on him of the injunction, been guilty of fitting up machinery and keeping it in running order, in a factory in Herkimer county, New York, which he knew was making hard India rubber in violation of the patents. This business he continued for some two months. He has been guilty of a clear violation of the injunction and an attachment must issue against him. He attempts to excuse himself by alleging that, before he entered on this business, he took the advice of his counsel, and was informed that he could right-

fully work for wages in the factory of another person, whether the product of the factory was an infringement of the Nelson Goodyear patent or not; and that he had no intention of committing a contempt of the process or authority of this court. The advice was unsound, and there is much evidence tending to show that the excuse is a mere pretence and ought not to be allowed. But the point will be disposed of hereafter. Let attachments issue against both of the defendants.

[NOTE. For other cases involving these patents, see Goodyear v. Evans, Case No. 5,571; Same v. Berry, Id. 5,556; Same v. Rust, Id. 5,-584; Same v. Wait, Id. 5,587; Same v. New York Gutta Percha Co., Id. 5,5z0; Same v. Mullee, Id. 5,578, 5,579; Same v. Allyn, Id. 5,555; Same v. Honsinger, Id. 5,572; Same v. Hullihen, Id. 5,573.]